IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DESHAWN DRUMGO,                )
                               )
            Plaintiff,         )
                               )
     v.                        )   Civil Action No. 14-1134-CFC
                               )
CPL. MATTHEW DUTTON, et al.,   )
                               )
            Defendants.        )

---

DeShawn Drumgo, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Joseph Clement Handlon, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Matthew Dutton, David Pierce, Michael Lenigan, Gregory Farrington, and Todd Drace.

**MEMORANDUM OPINION**

November 30, 2018
Wilmington, Delaware

**CONNOLLY, U.S. District Judge**

## I. INTRODUCTION

Plaintiff DeShawn Drumgo ("Drumgo"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 4) An Amended Complaint was filed on December 2, 2014. (D.I. 22) Defendants David Pierce ("Pierce"), Matthew Dutton ("Dutton"), Michael Lenigan ("Lenigan"), Todd Drace ("Drace"), and Gregory Farrington ("Farrington") ("collectively "Defendants") move for summary judgment.[2] (D.I. 100) Plaintiff opposes the motion and requests counsel and appointment of an expert. (D.I. 103, 106, 109)

## II. BACKGROUND

Plaintiff complains of unlawful conditions of confinement from September 13, 2013 through August 1, 2014, when he was housed in Buildings 17, 18, 19, 21, and 23 of the Security Housing Unit ("SHU") at the VCC. (D.I. 22 at 9) The Amended Complaint alleges that the vents are filthy and have not been cleaned in decades, there is a gas leak, and asbestos is airborne and is coming through the vents. Plaintiff alleges that he submitted grievances and wrote numerous letters to Dutton, former VCC Warden Pierce, Lenigan, Farrington, and Drace. Plaintiff alleges the conditions have caused his health to suffer.

---

[1] When bringing a § 1983 claim, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] All other defendants were dismissed on January 30, 2015, when the Amended Complaint was screened. (*See* D.I. 24, 25)

1

The Amended Complaint alleges that Farrington and another correction officer agreed the vents needed cleaning, that Lenigan did not dispute that the vents were filthy, and that Drace issued write-ups to inmates who covered the vents. When Plaintiff complained to a maintenance man on August 20, 2014 about the smell of gas, he was told there was a manifold leaking gas into the heating and/or cooling system. Plaintiff alleges that Lenigan was aware of the leak as of September 16, 2014. When Plaintiff complained to other correction officers, he was told to forget about the gas and worry about the asbestos coming through the ventilation. Plaintiff alleges that Pierce had known about the asbestos for some time, and Dutton denied the grievances Plaintiff submitted concerning the asbestos.

The evidence of record indicates that in August 2014, Lenigan requested Harvard Environmental, Inc. ("Harvard") to perform air monitoring services in the SHU in response to grievances filed by inmates about poor air quality, the presence of airborne mold, and other potential airborne substances. (D.I. 12-1 at Ex. A at ¶ 4; D.I. 12-1 at Ex. A at Ex. 1) Harvard performed air quality testing on September 3, 4, 8, and 9, 2014. (D.I. 12-1 at Ex. A at ¶ 5) The testing included gas monitoring and comparing the presence of mold and other particles naturally found in ambient conditions in the exterior and interior of structures. (*Id.*) Harvard's report, dated September 28, 2014, indicates there were "low to moderate levels" of airborne mold but the amount was "significantly lower than the exterior [and] are also consistent with the summer season and not considered as outside of normal." (D.I. 12-1 at Ex. A ¶ 1; D.I. 12-1 at Ex. A at Ex. 1 at 12) Harvard did not recommend any follow-up air quality testing unless

physical conditions of the areas changed. (D.I. 12-1 at Ex. A ¶ 6; D.I. 12-1 at Ex. A at Ex. 1 at 12)

On August 8, 2014, Building 18 experienced a smell of gas. (D.I. 103 at 4) Maintenance was called to the building to investigate and found a malfunctioning regulator. (*Id.*) The regulator was repaired and there were no other reports of "gas smells." (*Id.*) In addition, during the relevant time-frame, the Delaware Department of Correction ("DOC") was in the final phase of converting from steam to gas-fired boilers and heating units. (D.I. 12-1 at Ex. A at ¶ 7) On September 16, 2014, a facility maintenance mechanic identified a leak in a factory installed fitting inside a remote terminal unit on SHU Building 17. (*Id.*) A factory authorized repairman completed the repair on September 22, 2014. (D.I. 12-1 at Ex. A at ¶ 7; D.I. 12-1 at Ex. A at Ex. 2) In a September 27, 2014 unsworn, unverified statement made by inmate Samuel Evans ("Evans"), he states that he could smell gas coming through his vent. (D.I. 110) Evans states that "the people at JTVCC have claimed to fix the problem, but it hasn't been fixed yet." (*Id.*)

According to Lenigan he is unaware of any indication that asbestos was or is used in any of the SHU or the Medium-High Housing Unit ("MHU"). (*Id.* at ¶ 8) Lenigan states that the buildings where Plaintiff was housed, including SHU and MHU, were constructed in the late 1990's and early 2000's and that it would be highly unlikely construction during this time would have included asbestos. (*Id.*)

Plaintiff submitted a grievance in 2011 and asked to have someone clear the fences and clean the dust and dirt in Building 18. (D.I. 103 at 19) Farrington

investigated the grievance and recommended that maintenance use a hose/pressure washer or cleaning instruments to remove the dust and debris form the area. (*Id.*)

Plaintiff submitted grievances on August 20 and 25, 2014, October 22 and 23, 2014, and February 23, 2015, complaining of filthy vents, dust, mold, gas leaks, and the like. (D.I. 103 at 3, 20-28) In his August 24, 2015 grievance, Plaintiff complained that Dutton said there was no gas leak, but it was determined that the maintenance supervisor, not Dutton, had made the statement. (*Id.* at 4) In 2014 and 2015, Plaintiff submitted numerous sick call slips complaining that gas leaks and dust, dirt, and possibly asbestos blowing out of the ventilation affected his allergies.[3] (D.I. 103 at Ex. A)

Defendants move for summary judgment on the grounds that: (1) Plaintiff has failed to show personal involvement in violation of a constitutional right; and (2) Defendants are shielded from liability by qualified immunity.

## III. LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material

---

[3] The record contains numerous sick call slips dated September 3, 15, 16, and 20, 2014, December 3 and 20, 2014, February 8, 2015, March 12 and 17, 2015, and May 3, 2015. (D.I. 103 at Ex. A; D.I. 110; D.I. 112) Plaintiff received treatment for seasonal allergies. He filed numerous medical grievances seeking a transfer from his housing assignment and was encouraged to report his concerns to maintenance, and to address his health concerns with medical staff. (D.I. 103 at Ex. B) Plaintiff did not raise medical needs claims when he commenced this action.

4

fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be -- or, or alternatively, is -- genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Defendants move for summary judgment on the grounds that there is no evidence of personal involvement by any defendant in a constitutional violation and no evidence of a constitutional violation. Plaintiff argues that he was denied the minimal civilized measure of life's necessities when he was wrongfully housed in a building that posed an imminent danger and/or extreme danger of harm to him.[4] (D.I. 106 at 1) Plaintiff contends that the exposure to asbestos, gas and filth (*i.e.*, environmental factors) "created aggravating circumstances that aggravated [his] allergies, asthma, mental and physical health [and] Defendants did nothing despite the notification of

---

[4] In his opposition, dated April 5, 2018, Plaintiff states he needs experts to develop and evaluate the evidence, he needs an attorney, and he would like to subpoena two DOC employees. (D.I. 106) The requests for discovery are not considered. Discovery ended on March 1, 2018. (*See* D.I. 84)

verbal formal and informal along with grievances, letters directly to Pierce." (*Id.* at 5) He argues that he was deprived of the right to be free of shelter that threatened his mental and physical well-being. (*Id.* at 1)

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Plaintiff must show that Defendants knew of and disregarded an excessive risk to his health. *Farmer*, 511 U.S. at 837; *see Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety).

The evidence of record does not support Plaintiff's allegations that Defendants violated the Eighth Amendment by exposing him to unlawful conditions of confinement. With regard to air quality, the findings of air testing conducted during the relevant time period produced results that were not considered "as outside of normal." As to gas leaks, two leaks were reported on two separate occasions, neither of which lasted for an unduly length of time. Finally, Plaintiff's complaint of possible asbestos exposure is not

borne by the record given there is no evidence of the presence of asbestos in the areas where Plaintiff was housed.

Further, even assuming that Plaintiff met the prong to show objectively, sufficiently serious exposure to environmental factors, the record does not support a finding of deliberate indifference by Defendants. Lenigan, on behalf of the DOC, requested air quality testing because of past grievances submitted by inmates who complained of poor indoor air quality, the presence of airborne mold, and other potential airborne substances. The test results concluded the air quality was in the normal range. Plaintiff states, without any support, that the Harvard report is unreliable. As to the gas leaks, when discovered, both were repaired in a timely manner. Finally, when Plaintiff complained about dust and dirt particles, it was recommended that maintenance remove the dust and debris from the area.

Defendants refer to the dearth of evidence to argue they were not personally involved in a constitutional violation. In turn, Plaintiff argues that the more than 60 pages of exhibits (D.I. 103) he submitted show Defendants' personal involvement. Other than to refer to grievances, Plaintiff does not direct the Court to a particular exhibit or exhibits to support his position. In this regard, "the court is not obliged to scour the record to find evidence that will support a party's claims." *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001) (The court should not "be required to scour the . . . records and transcripts, without specific guidance, in order to construct specific findings

of fact" to support its memorandum opinion and order.) Regardless, as discussed above, the evidence does not support a finding of an Eighth Amendment violation.

Given the evidence of record, no reasonable jury could find Defendants violated Plaintiff's constitutional rights. Therefore, the Court will grant Defendants' motion for summary judgment.

V.  **CONCLUSION**

For the above reasons, the Court will: (1) grant Defendants' motion for summary judgment (D.I. 100);[5] and (2) deny as moot Plaintiff's request for counsel and to appoint an expert (D.I. 109).

An appropriate Order follows.

---

[5] The Court will not address the issue of qualified immunity given that Defendants did not violate Plaintiff's constitutional rights.